### MARTIN v. FOWLER.

1. FINDINGS OF FACT by Circuit Judge affirmed.
2. EVIDENCE—TRANSACTIONS, &c., WITH DECEDENT.—To permit a defendant in a suit by an administrator against him on a debt to testify that he met the deceased on several occasions with certain amounts of money on his person, that he did not have it when he left him, and that he did not lose it, is a palpable effort to evade section 400 of the Code.

Before WITHERSPOON, J., Spartanburg, September, 1896. Affirmed.

Action by E. and R. M. Martin, as administrators of Othello Martin, against James Fowler, in foreclosure. Both parties appeal from judgment.

*Messrs. Thomason & Bomar,* for plaintiffs, appellants. (Oral argument.)

*Messrs. Carlisle & Hydrick,* for defendant, appellant, cite: *Testimony of defendant as to having money in presence of deceased competent:* 41 S. C., 125.

March 17, 1898. The opinion of the Court was delivered by

MR. JUSTICE POPE. The plaintiffs' action was to foreclose a mortgage executed by the defendant to their intestate on the 2d February, 1883, due 1st October thereafter, to secure defendant's sealed note for $175. The defendant set up a counter-claim for usurious interest; also pleaded payment in lifetime of intestate; and also that payments thereon to intestate were not duly credited. Under an order of reference, the issues of law and fact were heard and reported on by L. R. Hill, Esq., as master for Spartanburg. Exceptions were filed to the master's findings of fact and conclusions of law, which came on to be heard before his Honor, Judge Witherspoon. His decree allowed an additional credit of $30 to the defendant, and gave plaintiffs a decree of $96.80, with interest thereon from 15th day

of June, 1896, which was the date of the decree, and directed the mortgaged land to be sold.

The defendant has excepted to said decree, and so have the plaintiffs. Without stating the language of the exceptions, we will consider them as embodying these propositions: 1. That, under the testimony, the note should have been held paid. We cannot so view the testimony, for, according to the testimony of two of the witnesses for the plaintiffs, the defendant admitted, after the death of the intestate, that he still owed something on the note. If anything was due, this exception could not be sustained. The witnesses, on the contrary, are exceedingly uncertain as to what note due by defendant to the intestate was referred to when the intestate referred to a note as paid. The proofs showed that there were several notes and mortgages held by plaintiffs' intestate against the defendant, and, after intestate's death, at least two notes secured by mortgage could not be found amongst the papers of intestate. No doubt, he had destroyed the note referred to as paid.

2. That the testimony required that defendant should have been allowed credits on his note: $10 alleged to have been paid in gold; $5 paid on the road to Gaffney; $10 alleged to have been paid at the time of a trade for a wagon between Fowler and Bridges; $18.09 with money got from Moore; $16 with money got from Charles Fowler; and money paid to intestate by Bridges and Sarratt. We have examined this testimony with care. We do not remember ever to have encountered more indefiniteness in testimony. No time is fixed for any of these alleged payments, except for the very last. Inasmuch as defendant owed other debts to the intestate besides the note and mortgage now sued on, we do not see how we can impute error to the Circuit Judge and master in declining to allow these credits. We find in the "Case" that the intestate placed two credits on the note—one for $50 and one for $17, with the date of each, both of which were after the note matured. So far as the

Bridges and Sarratt payments are concerned, the credit therefor was allowed by the master and approved by the Circuit Judge.

3. That the $30 ordered to be credited as money paid by defendant to the wife of intestate, as his agent, should be credited as of 15th of June, 1896—when it is submitted an earlier credit should have been given. We think, under the testimony, the proper date was fixed. It was defendant's misfortune not to be able to establish the true date. That, under the testimony, the sum of $96.80 was not correct as the amount owed by the defendant on 15th June, 1896. We have examined the testimony from beginning to end, and it is apparent therefrom that full justice has been done to the defendant.

4. That there was an error by Circuit Judge in ascribing the credit of $48, allowed by the master, to the $16 paid by Sarratt: $16 by Bridges. The testimony showed that *three* persons who bought hogs, each of whom owed about $16, and which defendant had included in his note, paid their indebtedness to the intestate on or about 1st October, 1883, when defendant's note matured. There were no other payments than these to make up this account for which credit was allowed by the master, and, therefore, the Circuit Judge did not err when he approved the finding of the master.

5. That the Circuit Judge erred when he held that the testimony of defendant, when he testified "that he saw the deceased on different occasions when he (the defendant) had certain sums of money in his possession, referred to in the exceptions, and that he (the defendant) did not have the money, and had not lost it, after he left the deceased intestate," was incompetent under section 400 of the Code: and that he also erred when he said that the purpose of said section of the Code would be defeated and evaded by the admission of such testimony, and in not considering such testimony in reaching his conclusions. In the first place, we might dispose of this exception by saying it looks very much like harmless error in

the Circuit Judge in refusing to consider such testimony. It was indefinite to such a degree that human rights ought not to be jeopardized by it. But, in the second place, it was objectionable under the Code (section 400). It was a palpable effort to evade and nullify the wholesome rule fixed by the legislature in the adoption of this section. A halt should be called, and a result which could not be legally obtained by direction, should be forbidden by such indirection.

The eighth exception imputes error to Circuit Judge for not having sustained the position that the plaintiff's intestate had charged usurious interest. We have examined the "Case," and not a scintilla of evidence there appears to support this charge. It is overruled.

Now as to plaintiffs' exceptions. 1. They allege that the Circuit Judge erred in admitting the $30 credit in addition to that allowed by the master. One of the plaintiffs himself admitted, and other persons proved, that Mrs. Martin acted as the agent of the intestate in his lifetime in receiving money. It was not denied that Mrs. Martin received this money. Therefore, it was not error on the part of the Circuit Judge.

2. That after admitting the defendant to have credit for the $30 paid to the wife of the intestate, it was error to direct its application to the note in suit, and not to some other notes held by the estate of intestate against the defendant. The note sued on is the only note of force in the light of the testimony of defendant, which was admitted without objection; the other note, that assigned to intestate by R. E. Linder, was included in the note and mortgage sued on. So, therefore, if the defendant was to obtain any benefit from the $30 credit, it had to be placed on the note sued on. It is true, that the plaintiffs' counsel very ingeniously call our attention to the fact that the present note and mortgage were executed on the 2d February, 1883, while the assignment from R. E. Linder of his note and mortgage to the intestate occurred on the next day. It should be recalled, however, that the papers show that the

dower was not renounced until the 3d February, 1883, which shows that the transaction as to the mortgage sought now to be foreclosed occupied both days, the 2d and 3d of February, 1883. It frequently happens in business that a paper—note, for instance—which is arranged to be taken up by another than the maker for the maker's accommodation, is dated afterwards. These exceptions are untenable.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.